IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                              |     |                           |
|------------------------------|-----|---------------------------|
| PREMIUM OF AMERICA, LLC      |  *  |                           |
|   Plaintiff,                 |  *  |                           |
|                              |  *  |                           |
|     v.                       |  *  | CIVIL NO.: WDQ-12-0580    |
| SAVE POA, LLC, *et al.*,     |  *  |                           |
|   Defendants.                |  *  |                           |
|                              |  *  |                           |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Premium of America, LLC ("POA") sued Save POA, LLC ("Save POA") and David Hartcorn (collectively, the "Defendants") for declaratory and injunctive relief. For the following reasons, the Defendants' motion to dismiss the action with prejudice will be granted.[1]

---

[1] POA has moved to file a surreply to the Defendants' motion to dismiss. ECF No. 14. The motion is unopposed, *see* ECF No. 15, and will be granted. Local Rule 105.2(a) (D. Md. 2011).

I.  Background[2]

POA is a Delaware limited liability company, formed in
August 2003 to manage a portfolio of viaticals[3] on behalf of its
Members.  Compl. ¶¶ 1, 8, 12.  POA's total assets exceed $10
million, and it has more than 4500 Members.  *Id.* ¶¶ 1, 14.
Accordingly, POA asserts that its membership interests are
"securities required to be registered with the Securities and
Exchange Commission" (the "SEC").  *Id.* ¶ 14.  POA has "begun,"
but not completed, registration by "retaining legal and
accounting professionals."  *Id.* ¶ 15.

POA was formed as a result of a bankruptcy reorganization.
Compl. ¶ 12.  Before POA's formation, the viaticals were sold to
persons--now POA's Members—-by a family of companies[4] (collec-
tively, the "Beneficial Companies").  *Id.* ¶ 8.  Hartcorn was an

---

[2] For the motion to dismiss, the well-pled allegations in the
complaint are accepted as true.  *Brockington v. Boykins*, 637
F.3d 503, 505 (4th Cir. 2011).  A court may consider documents
referenced in and relied on by the complaint on a 12(b)(6)
motion without converting it into a motion for summary judgment.
*Md. Minority Contractor's Ass'n, Inc. v. Md. Stadium Auth.*, 70
F. Supp. 2d 580, 592 n.5 (D. Md. 1998), *aff'd*, 198 F.3d 237 (4th
Cir. 1999).

[3] A "viatical" is "an investment in the right to receive the
death benefit from an insurance policy on the life of a
terminally ill third party."  Compl. ¶ 7.  Its value is based on
the ill party's life expectancy.  *Id.*

[4] Beneficial Financial Services, Inc.; Beneficial Assurance,
Ltd.; Beneficial Funding Corporation Inc.; Beneficial Services
Corporation; Beneficial Assistance, Inc.; and Premium Escrow
Services, Inc.  Compl. ¶ 8.

agent of one of the Beneficial Companies, with authority to sell viaticals for the company. *Id.* ¶ 9.

On November 20, 2002, the Beneficial Companies filed for bankruptcy protection[5] in the U.S. Bankruptcy Court for the District of Columbia. Compl. ¶ 10. The Official Committee of Unsecured Creditors of the Beneficial Companies proposed an "Amended Plan of Reorganization of Premium Escrow Services, Inc." (the "Plan"). *Id.* ¶ 12. On August 12, 2003, the bankruptcy court entered the Plan, which required:

    (1)  "the creation of POA to administer the viaticals";

    (2)  "the assignment by individual investors of their rights under their viaticals in exchange for [POA] membership";

    (3)  "distribution of the [viaticals'] proceeds . . . to POA's Members in amounts equal to each Member's pro rata share of the aggregate investment"; and

    (4)  "adoption of an LLC Agreement" to govern POA's affairs.

*Id.*

After its formation, POA sought to "recover such losses as its Members sustained by virtue of [the] Beneficial Companies' agents' negligence." Compl. ¶ 16. POA brought "multiple actions" in Maryland and California against the agents who had

---

[5] POA alleges that the Beneficial Companies filed for bankruptcy to "avoid enforcement proceedings brought by the Maryland Securities Commissioner" for selling unregistered viatical investment contracts in violation of state securities law. Compl. ¶ 10.

sold its Members viaticals "based at least in part" upon

misrepresentations as to the ill party's life expectancy. *Id.* ¶

17.[6]  Hartcorn was among those sued. *Id.* ¶ 18.  According to

POA, the litigation "has prompted some of th[e] agents to

endeavor to gain control of the company through efforts targeted

to deceive the very same persons to whom the viaticals were sold

initially, i.e., POA's Members." *Id.* ¶ 17.

On March 31, 2011, Hartcorn formed Save POA.  Compl. ¶ 19.

Citing Save POA's website, POA asserts that Save POA was formed

to "monitor[] POA and urg[e] change to its board's composition."

*Id.* ¶ 2.  Specifically, since March 2011, Save POA and Hartcorn

have "waged a campaign to obtain the proxies"[7] of POA Members

"for the sole purpose of gaining control of POA and ousting the

current Board [to] deflect[] litigation against the agents of

---

[6] Compl. ¶¶ 16-18.  On August 31, 2010, POA also sued Turning
Block LLC ("Turning Block")--an entity formed by an agent of the
Beneficial Companies—-in the Circuit Court for Anne Arundel
County, Maryland. *Id.* ¶¶ 20, 22.  POA alleged that Turning
Block had solicited POA Members to purchase their interests in
POA, and violated the LLC Agreement, federal and state
securities laws, and other law. *Id.*  The case was dismissed on
August 25, 2011, after Turning Block withdrew its offer. *Id.* ¶
23.

[7] "Proxy" is defined as: (1) "One who is authorized to act as a
substitute for another; esp., in corporate law, a person who is
authorized to vote another's stock shares"; (2) "[t]he grant of
authority by which a person is so authorized"; or (3) "[t]he
document granting this authority." *Black's Law Dictionary* 1346
(9th ed. 2009).  A "proxy solicitation" is "[a] request that a
corporate shareholder authorize another person to cast the
shareholder's vote at a corporate meeting." *Id.*

4

the Beneficial Companies."[8]   POA particularly objects to one
proxy solicitation (the "Solicitation"), which is attached to
POA's Complaint, ECF No. 1-5, and which:

(1)   states that POA spent $5.8 million in legal fees
      ("wasteful spending"), but does not "credit POA" for its
      legal successes, Compl. ¶ 35(a);

(2)   states that POA paid Ira Rigger[9] $1 million in salary,
      but "fails to state" that this was paid over the course
      of more than seven years, id. ¶ 35(b);

(3)   "wrongly implies" that Rigger acted "on his own" in
      authorizing POA's lawsuits, when he in fact acted with
      the "full informed consent" of the board and individual
      Member approval is not required by the LLC Agreement, id.
      ¶ 35(c); and

(4)   "states that there has been no regulatory monitoring" by
      the SEC and that the Members are thereby subject to "a
      great deal of potential exposure," when in fact the

---

[8] Compl. ¶ 32.  For instance, in June 2011, Hartcorn asked Carole
Thetford, a POA Member, to sign a "blank piece of paper" that
Thetford thought "would lead to a greater return on her
investment."  Id. ¶¶ 25-26 (internal quotation marks omitted).
Instead, Hartcorn "procured" a letter that "solicit[ed] proxies
from other Members."  Id. ¶ 28.  In June 2011, the letter
bearing Thetford's signature was circulated to POA Members.  Id.
¶ 27.  On or about February 10, 2012, Thetford formally retrac-
ted it.  Id. ¶ 29.

[9] Ira Rigger is POA's Chief Executive Officer, and a board member
of POA.  Compl. ¶ 13.

Members are not exposed to "personal sanction," *id.* ¶
35(d).

On February 23, 2012, POA sued, seeking declaratory and
injunctive relief against the Defendants for violations of the
Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78hh (the
"Act" or "Exchange Act").  Compl. ¶¶ 4-5.[10]  On March 6, 2012,
POA moved for summary judgment.  ECF No. 4.  On March 22, 2012,
the Defendants moved to dismiss for lack of subject matter
jurisdiction or for failure to state a claim.  ECF No. 7.  On
March 23, 2012, the Defendants moved to extend the time to
oppose POA's motion for summary judgment until after the Court's
ruling on the motion to dismiss or "the parties have conducted
reasonable discovery."  ECF No. 8 at 3.  On March 28, 2012, POA
opposed extending the time to respond to the summary judgment
motion until after discovery.  ECF No. 9.  On April 5, 2012, POA
opposed the motion to dismiss.  ECF No. 10.  On April 16, 2012,

---

[10] Count I alleges failure to comply with the SEC's filing and
delivery rules applicable to proxy solicitations.  *Id.* ¶ 38.
Count II alleges failure to comply with the SEC rule prohibiting
materially false or misleading statements and omissions in such
solicitations.  *Id.* ¶ 41.  POA requests that the Court: (1)
enter judgment and declare that the Solicitation is "unlawful
and void;" (2) order the Defendants to remove all portions of
"savepoa.com" soliciting POA Member proxies (a) until POA's
registration is complete and the Defendants have "complied with
all relevant laws" and (b) that contain materially false or
misleading statements or omissions; (3) order the Defendants to
cease permanently "any and all" POA Member proxy solicitations
that do not comply with the SEC rules; and (4) "[s]uch other and
further relief as this Court deems equitable and proper."  *Id.*
at 8-10.

the Defendants filed their reply in support of more time to oppose the motion for summary judgment.  ECF No. 11.

On April 18, 2012, this Court stayed POA's motion for summary judgment pending its ruling on the motion to dismiss. ECF No. 12.  On April 23, 2012, the Defendants filed a reply in support of their motion to dismiss.  ECF No. 13.  On April 25, 2012, POA moved to file a surreply to the motion to dismiss. ECF No. 14.  On April 26, 2012, the Defendants indicated that they "have no objection to [POA's] proposed surreply."  ECF No. 15 at 1.[11]

II. Analysis

The Defendants contend that POA's failure to allege registration under Section 12 of the Exchange Act, *see infra* Part II.B, requires dismissal for lack of subject matter jurisdiction or failure to state a claim.  ECF No. 7-1 at 5-6.

A. Standards of Review

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if at any time it discovers it lacks subject matter

---

[11] A related lawsuit was filed in the Delaware Court of Chancery. Compl. ¶ 30.  Eric Huck—a former agent of the Beneficial Companies—sued POA to validate a vote at POA's annual meeting on February 23, 2012.  *See id.* ¶ 31; ECF No. 14-1 at 8, 11.  On April 18, 2012, the court held oral argument on POA's motions to dismiss and to stay.  ECF No. 14-1 at 3.  Although POA alleged that the Delaware action and the action pending before this Court are "very closely intertwined," requiring a stay or dismissal, the Delaware court disagreed, *id.* at 10, 35.  The matter was set for a three-day trial beginning September 4, 2012.  *See* ECF No. 16 at 1.

jurisdiction.  The plaintiff has the burden of proving the Court

has jurisdiction, and the Court must make all reasonable

inferences in the plaintiff's favor.  *Khoury v. Meserve*, 268 F.

Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th

Cir. 2004).  The Court may "look beyond the pleadings" to decide

whether it has subject matter jurisdiction, but it must presume

that the factual allegations in the complaint are true.  *Id.*

"[A] claim under the Declaratory Judgment Act, even if

made, does not confer jurisdiction."  *Interstate Petrol. Corp.*

*v. Morgan*, 249 F.3d 215, 221 n.7 (4th Cir. 2001) (*citing Skelly*

*Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950)).  The

declaratory judgment plaintiff must establish federal jurisdic-

tion by alleging either a federal claim against the defendant,

or that there would be federal question jurisdiction over a

claim the defendant could bring against the plaintiff.  *Columbia*

*Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir.

2001).[12]

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed

for failure to state a claim upon which relief can be granted.

---

[12] Lack of jurisdiction over the declaratory judgment defendant's
claim does not end the court's inquiry.  *United States v. Penn.*
*Dep't of Envtl. Res.*, 923 F.2d 1071, 1073 (3d Cir. 1991) (dis-
trict court abused its discretion by dismissing declaratory
judgment suit when the district court had original jurisdiction
over the civil action commenced by the United States—although
the district court had previously remanded the underlying
dispute because it did not arise under federal law).

Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. The Exchange Act: Proxy Solicitation and Registration

The federal government began to regulate securities transactions after the 1929 market crash. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976). In 1934, the Exchange Act was enacted to "protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges and in over-the-counter markets, and to impose regular reporting requirements on companies whose stock is listed on national securities exchanges." *Id.* at 195. The Act is administered by the SEC's "arsenal" of "flexible enforcement powers." *Id.*

Proxy solicitations are among the areas "subject to SEC control."[13]  Section 14(a)[14] provides:

> (1) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of

---

[13] 1 Federal Securities Act of 1934 § 1.01 (A.A. Sommer Jr. ed., rev. ed. 2012).

[14] 15 U.S.C. § 78n(a)(1).  Section 14(a) "embodies a policy of broad disclosure designed to protect the basic right of corporate suffrage." *Allen v. Lloyd's of London*, 94 F.3d 923, 931 (4th Cir. 1996).

> any security (other than an exempted security)
> *registered pursuant to section 12 of this title*
> (emphasis added).

Implementing § 14(a), Rule 14a-6 requires that copies of a proxy statement[15] be filed with the SEC.  17 C.F.R. § 240.14a-6(a), (b) (2012).  Rule 14a-3 requires that each person solicited also be provided with a proxy statement.  *Id.* § 240.14a-3(a).  Rule 14a-9 disallows the use of materially false or misleading statements in proxy statements.  *Id.* § 240.14a-9(a).  Like § 14(a), the proxy solicitation rules only apply to securities that are "registered" under Section 12.[16]

Section 12(g)[17] requires, *inter alia*, "an issuer to file an Exchange Act registration statement regarding a class of equity securities within 120 days of the last day of its fiscal year if, on that date, the number of its record holders is 500 or greater, the number of its U.S. resident holders is 300 or more,

---

[15] A "proxy statement" is "[a]n informational document that accompanies a proxy solicitation and explains a proposed action (such as a merger) by the corporation."  *Black's Law Dictionary* 1347 (9th ed. 2009).

[16] *See* 17 C.F.R. § 240.14a-2 ("Sections 240.14a-3 to 240.14a-15, except as specified, apply to every solicitation of a proxy with respect to securities registered pursuant to section 12 of the Act (15 U.S.C. 78*l*). . . .").

[17] 15 U.S.C. § 78*l*(g); *see also* 17 C.F.R. §§ 240.12g-1, 240.12g3-2(a) (Section 12(g)'s implementing rules).

11

and the issuer's total assets exceed $10 million."[18]

C. Subject Matter Jurisdiction

A federal court generally may not decide the merits of a case without first determining that it has subject matter jurisdiction. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). The plaintiff bears the burden of proof on subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Under Fed. R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action" (emphasis added).

The district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] suit does not so arise unless it really and substantially involves a dispute or controversy respecting the *validity, construction, or effect* of such a law, upon the determination of which the result depends." *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912) (emphasis added).

POA seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Compl. ¶ 4. To establish federal jurisdiction,[19]

---

[18] Exemption from Registration Under Section 12(g) of the Securities Exchange Act of 1934 for Foreign Private Issuers, 73 Fed. Reg. 52752, 52752 n.11 (Sept. 10, 2008); *see also* 15 U.S.C. § 78*l*(g).

[19] *See Columbia Gas*, 237 F.3d at 370.

POA asserts that the action arises under the Securities Exchange
Act of 1934, 15 U.S.C. §§ 78a-78hh.  *Id.* ¶ 6.  Allegedly, the
Defendants failed to comply with certain proxy solicitation
rules and therefore violated the Act.  Compl. ¶¶ 36-42.  The
Defendants argue that the Court lacks subject matter jurisdic-
tion because POA "fails to allege, and in fact cannot allege"
that the securities at issue are "registered."  ECF No. 7-1 at
5; *see supra* Part II.B.  The Defendants cite several federal
court decisions that claimed violations of SEC proxy
solicitation rules "must fail" if they do not concern any
registered security.  *See* ECF No. 7-1 at 7.

The federal "question" in this case is whether the
Defendants' actions are subject to the Exchange Act and
corresponding proxy solicitation rules, even though POA has not
registered its securities with the SEC.  Plainly, the suit
"really and substantially" involves construction of a federal
law, "upon the determination of which the result depends."
*Shulthis*, 225 U.S. at 569.  Accordingly, this Court has
jurisdiction to decide the case.[20]

---

[20] *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503, 515 (2006)
(discussing "the distinction between two sometimes confused or
conflated concepts: federal-court 'subject matter' jurisdiction
over a controversy; and the essential ingredients of a federal
claim for relief," and holding that a statutory requirement
limits a Court's subject matter jurisdiction only if "the
Legislature clearly states" that it is jurisdictional); *W. Sky
Fin., LLC v. Md. Comm'r of Fin. Regulation*, No. WDQ-11-1256,

D. Failure to State a Claim

When read with its implementing rules, § 14(a) of the Exchange Act regulates the method and content of proxy solicitations. *See supra* Part II.B. By its express terms, the section only applies to securities "registered pursuant to section 12 of this title." 15 U.S.C. § 78n(a)(1). The proxy solicitation rules also apply only to registered securities.[21] POA asserts that it is required to register its securities with the SEC. Compl. ¶ 14; ECF No. 10 at 3.[22] It has not yet done so. Compl. ¶ 15; ECF No. 10 at 3.

Because the proxy solicitation rules did not apply to the Defendants at the time of the Solicitation, and because POA's sole grounds for relief are alleged violations of those rules, Compl. ¶¶ 36-42, the Defendants insist that the action must be dismissed, ECF No. 7-1 at 2. POA contends that public policy requires application of proxy regulations to securities that

---

2012 WL 3126863, at *3 (D. Md. July 31, 2012) (explaining that § 1983's statutory requirements are "elements of a plaintiff's claim, not jurisdictional pre-requisites to bringing an action in federal court").

[21] *See* 17 C.F.R. § 240.14a-2 ("Sections 240.14a-3 to 240.14a-15, except as specified, apply to every solicitation of a proxy with respect to securities registered pursuant to section 12 of the Act (15 U.S.C. 78*l*). . .").

[22] The Defendants dispute whether POA is required to register its securities. ECF No. 13 at 3, 7 n.3. However, when considering a motion to dismiss, the court must accept a complaint's well-pled allegations as true. *Brockington*, 637 F.3d at 505.

should be--but are not--registered, ECF No. 10 at 6, and argues that dismissal of the action would harm its Members. *Id.* at 12. POA asks that the Court "craft an equitable remedy" that will require POA to register, at which point "all interested parties may solicit proxies in an orderly fashion under the law." *Id.* Whether the proxy solicitation rules apply to securities that should be--but are not--registered is of first impression in this circuit.

1. Statutory Interpretation

"[A]ll statutory interpretation questions . . . must begin with the plain language of the statute." *Negusie v. Holder*, 555 U.S. 511, 542 (2009). "[C]lear language . . . leaves no room for policy argument. The rules are applicable, or they are not. A legal argument predicated on the theory that the rules do not mean what they say is 'destined to fail.'" *Steele v. Polymer Research Corp. of Am.*, No. 85 Civ. 5563 (CSH), 1987 WL 12819, at *2 (S.D.N.Y. June 18, 1987) (*quoting Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985)).

As discussed above, the Exchange Act's proxy solicitation provisions, and implementing rules, only apply to securities that are "registered" under the Act. Section 14 does not, by its terms, apply to securities that "should" or "ought" or "will" be registered. The Court should not stray from this plain meaning. *Negusie*, 555 U.S. at 542 ("If the text of a

statute . . . directly addresse[s] the precise question at issue, then, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress." (internal quotation marks omitted)).

2. Caselaw

Caselaw affirms that the SEC's proxy solicitation rules do not apply to unregistered securities.[23]   In light of the

---

[23] *See, e.g., Republic Tech. Fund., Inc. v. Lionel Corp.*, 483 F.2d 540, 545 (2d Cir. 1973) (holding that "[t]he claimed violation of the proxy rules must fail" because the relevant proxies were not solicited in respect of any registered security); *In re Gen. Instrument Corp. Sec. Litig.*, 23 F. Supp. 2d 867, 870 (N.D. Ill. 1998) (the challenged statements solicited shares that "were not registered pursuant to § 12 of the Exchange Act," warranting dismissal with prejudice for failure to state a claim); *Greenberg v. Institutional Investor Sys., Inc.*, No. 74 Civ. 3866, 1975 WL 402, at *2 (S.D.N.Y. July 1, 1975) ("It is undisputed that as of May 5, 1974 the Company's stock was no longer registered under § 12.   Therefore, no § 14 liability can attach with respect to a proxy statement issued on July 10, 1974."); *Bound Brook Water Co. v. Jaffe*, 284 F. Supp. 702, 705 (D.N.J. 1968) (noting the defendants' failure to allege that the securities at issue were registered "so as to fall within" Section 14 "[could not] be remedied by amendment").

POA objects that the cited cases are "inapposite," because they concern the applicability of the proxy solicitation rules to companies that were not *required* to be registered at the time of the solicitation.   ECF No. 10 at 8.   There is some judicial support for POA's position.   In *Reserve Life Insurance Co. v. Provident Life Insurance Co.*, 499 F.2d 715 (8th Cir. 1974), the court relied on policy considerations in holding that the mere *obligation* to register under § 12 "brings into play" § 14's proxy solicitation provisions.   *Id.* at 724; *accord Bastian v. Lakefront Realty Corp.*, 581 F.2d 685, 690 (7th Cir. 1978).

*Reserve* is factually distinguishable from this case.   In *Reserve*, a company's management failed to register its securities, and simultaneously violated proxy solicitation rules, to "thwart attempts by outside interests to obtain a controlling interest in the company."   *See* 499 F.2d at 717, 725.   The

statutory language, as interpreted by several federal courts, this Court holds that the Exchange Act's proxy solicitation rules apply only to registered securities.  Because POA's membership interests were not registered at the time of the Defendants' Solicitation, the proxy solicitation rules do not apply.  Thus, POA's Complaint fails to state a claim for which relief can be granted.[24]

III. Conclusion

For the reasons stated above, the Court will grant the Defendants' motion to dismiss with prejudice.

_9/27/12_
Date

_____
William D. Quarles, Jr.
United States District Judge

---

*Reserve* court held, that in this unique context, "a corporation at all pertinent times subject to registration and proxy requirements could not escape the latter merely because they are literally applicable only to solicitations of proxies for 'registered' securities." *Bastian*, 581 F.2d at 690; *see also Susman v. Lincoln Am. Corp.*, 500 F. Supp. 748, 752 (N.D. Ill. 1980) ("By their terms no violation of the proxy solicitation rules can occur until after the effective date of a registration statement. . . .  Reserve Life is wholly consistent with that conclusion, for in that case the *issuer* had failed to register its securities, and then [the issuer had] distributed proxy materials well after the expiration of the Section 12(g) 120-day period.") (emphasis added).  Unlike in the cases it cites, POA has made no allegations of insider abuse that would justify this Court's fashioning of equitable relief.

[24] Because the Court will grant the Defendants' motion to dismiss, it will not address whether the Solicitation is within an exception to the SEC rules.  *See* ECF No. 7-1 at 10; ECF No. 10 at 9-12.